ELADIA CAMACHO WIDOW OF ALUSTIZA ET AL., Plaintiffs and Appellants, *v.* THE CATHOLIC, APOSTOLIC AND ROMAN CHURCH, DIOCESE OF PONCE, Defendant and Appellee.

No. 10378.   Argued March 8, 1951.—Decided March 30, 1951.

*Aníbal Padilla* for appellants. *Fernando Zapater Martínez* and *Antonio Zapater Cajigas* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Eladia Camacho widow of Alustiza and Luis Camacho filed a complaint for breach of contract against the Catholic Apostolic and Roman Church, Diocese of Ponce.[1] They alleged, in substance, that the defendant is the owner of a tract of land located in the Canas Ward of Ponce which is devoted to a cemetery, having given the conservation, management and safety of the same to the Congregation of the

---

[1] We shall hereinafter refer to the defendant as the Catholic Church.

Mission of the Paulist Fathers;[2] that the plaintiff Eladia Camacho contracted marriage with Julio Alustiza on May 2, 1939, after having lived in concubinage with him for more than 25 years; that coplaintiff Luis Camacho was the foster child of Julio Alustiza; that he always lived with the latter and that there existed between them true relations of father and son; that Julio Alustiza died in Ponce on August 4, 1939 and for the purpose of burying him and keeping his remains there forever, the plaintiffs purchased from defendant Catholic Church vault No. 48 in the gallery known as San Francisco of the San Vicente de Paúl Cemetery, where the body of Julio Alustiza was interred; that notwithstanding the fact that the vault had been sold to the plaintiffs, the Catholic Church sold the same to another person on August 14, 1944 and said person, on December 23, 1945, with the authorization of the managing Congregation, had the vault opened, took out the remains of Julio Alustiza and buried therein the body of Cecilia García widow of Prieto without the consent of the plaintiffs; that on Mother's Day of the year 1947 [3] the plaintiffs went to visit Julio Alustiza's grave and there for the first time were informed that the remains of the latter had been removed from the vault as a result of which plaintiff Eladia Camacho widow of Alustiza suffered serious mental anguish, a nervous breakdown and loss of health, while coplaintiff Luis Camacho suffered great pains and mental anguish. The former claims $10,000 and the latter $5,000.

The Catholic Church answered and denied each and every one of the facts alleged in the complaint. It set up the following defenses: (1) lack of a cause of action; (2) prescription; (3) res judicata; (4) misjoinder of parties; and (5) striking out the allegations of damages consisting in anguish,

---

[2] A previous complaint filed against said Congregation and others was dismissed by the District Court of Ponce on January 27, 1948, and the judgment rendered was affirmed by us on May 4, 1949. See our Per Curiam opinion of said date.

[3] The evidence proves that it was May 12, 1946.

pains and mental sufferings since in its opinion such allegations were improper in actions for breach of contract.

After innumerable questions of law were raised by both parties which need not be reported here, a trial was held and the District Court of Puerto Rico, Ponce Section, rendered judgment on August 29, 1950, dismissing the complaint with costs. It concluded that the damages to which plaintiffs might be entitled are those which were foreseen or could have been foreseen at the time the obligation was constituted or those which are a necessary consequence of its nonperformance; that there was no breach of contract by the defendant because when the lease of the vault expired without the plaintiffs perfecting the deed of sale, the defendant was relieved from all responsibility or obligation of keeping for the plaintiffs the possession of the same; that even assuming that the defendant infringed the contract entered into with the plaintiffs, the latter did not prove having suffered any prejudice nor did they put the court in a position to appraise fairly the alleged damages concerning the nervous breakdown or loss of health; and finally that the cases of *Valedón* v. *The Municipality of Ponce*, 46 P.R.R. 530 and *Conde* v. *The Municipality of Ponce*, 48 P.R.R. 570, were not applicable to the factual situation in the case at bar. The plaintiffs appealed and now maintain that the judgment is contrary to the facts and to the law.

██ It unequivocally appears from the record that Julio Alustiza died in the city of Ponce on August 4, 1939 and that he was buried in vault No. 48 in San Francisco gallery of San Vicente de Paúl Cemetery belonging to defendant Catholic Church and administered by the Congregation of Paulist Fathers; that on August 5 of the said year the said Congregation leased the vault in question to the plaintiffs for five years with an option to buy the same during that period, and that the defendant could rescind the contract if at the end of the five years the plaintiffs had not paid its total

price which was originally fixed in $60 and afterwards reduced to $50; that up to June 23, 1940 the plaintiffs had paid the sum of $25 making an additional payment of $5.00 on March 21, 1944 for which the corresponding receipt was issued in favor of Luis Camacho [4] by Father Marijuán in his capacity as manager of the cemetery; that subsequent to August 5, 1944 and after the lease had expired, Father Marijuán, as such manager, notified the expiration of the lease to the Alustiza family;[5] that in answer to said notice a member of said family went to Father Marijuán and paid the remaining $30 for which a receipt of full payment was issued and ownership of the vault conveyed to the "Alustiza family"; that although Julio Alustiza, the decedent, belonged to the said Alustiza family the members of the latter were not in good terms with plaintiffs Eladia and Luis Camacho and did not inform the latter of the sale of the vault in their favor; that after Father Marijuán received the $30 in the name of the said family, he left for San Juan without making the corresponding entry in the records of the cemetery indicating the receipt of said amount and the conveyance of ownership to the Alustiza family; that thus on November 22, 1944, Luis Camacho, who was unaware of the fact that vault No. 48 had already been sold to a third person, made an additional payment of $10 for the account of said vault, and a receipt for said sum was issued by the manager in his favor there appearing a remark in the registry of the cemetery in connection with the said vault, which reads: "Still owes $10"; that on November 5, 1945 Luis Camacho paid another $10 for the

---

[4] In the record of the vaults kept by the manager of the Congregation there appeared an entry to the effect that Father Morondo had reduced the price of the vault for the plaintiffs from $60 to $50; that around June 23, 1940 the plaintiffs only owed the sum of $25; and that said note was written by Father De La Guerra who was in charge at that time. (When on March 21, 1944 plaintiff Camacho paid the afore-mentioned $5.00 Father De La Guerra had already died.)

[5] He believed that as the buried body was that of Julio Alustiza his duty was to give notice to the Alustiza family and not to the plaintiffs herein.

same purpose and a receipt for said sum was issued in favor of Eladia Camacho widow of Alustiza, it being stated therein that said payment cancelled the debt and that title of the vault was vested in Luis Camacho.

It also appears from the record that on December 23, 1945 Cecilia García widow of Prieto, mother-in-law of a sister of deceased Julio Alustiza, died; that for said reason a member of the Alustiza family appeared before Father Azurmendi, new manager of the Congregation and as such in charge of the cemetery, and after showing the receipt of ownership issued in the name of said family, he requested authorization for burying the body of Mrs. García widow of Prieto in vault No. 48; that the tomb was opened and the remains of Julio Alustiza exhumed, whereupon the caretaker placed them first in an empty cement bag and later in a cloth bag which was in turn placed inside the same vault; that the body of Mrs. García widow of Prieto was buried within vault No. 48, which was sealed and a new inscription placed which reads thus: Cecilia García widow of Prieto—1862—December 23, 1945—Remains of Julio Alustiza—August 4, 1939; and that Julio Alustiza's gravestone which was on the vault— donated by the American Legion,—was moved to Dr. Justo Prieto's house, son of the deceased, and has ever since been kept in a garage.

The plaintiffs also introduced evidence tending to prove that on Mother's Day of the year 1946 the plaintiff Eladia Camacho widow of Alustiza and her son Luis Camacho went to the Catholic Cemetery in Ponce to visit Julio Alustiza's grave and that in doing so they learned for the first time about the exhumation of the remains of Julio Alustiza, and of the burial in the same vault of Mrs. García widow of Prieto, etc.; that as a result thereof, the plaintiff has been ill ever since and suffers from high blood pressure, albumin and nervousness; that she can hardly work, and that plaintiff Luis Camacho regarded Julio Alustiza as his real father inasmuch as his mother and the latter lived together since he

was born, and that due to his mother's illness he can hardly work because he has to take care of her. Under these circumstances, are the plaintiffs entitled to recover the damages claimed? Let us see:

Our Civil Code provides in its §§ 1054 and 1060, 1930 ed., as follows:

"Section 1054.—Those who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby."

"Section 1060.—The losses and damages for which a debtor in good faith is liable, are those foreseen or which may have been foreseen, at the time of constituting the obligation, and which may be a necessary consequence of its nonfulfillment.

" .    .    .    .    .    .    ."

In the case at bar, as we have seen, the defendant leased, with an option to purchase, a vault to the plaintiffs. The price fixed was $50 of which the plaintiffs had only paid the sum of $30 at the end of the 5-year period stated in the contract. The plaintiffs having failed to exercise their right of option within the said period, the defendant, according to law, was entitled to rescind the contract. Section 1077 of the Civil Code, 1930 ed.[6] See also *Federal Land Bank* v. *Echeandía*, 48 P.R.R. 311. However, the defendant did nothing of the sort. Instead, it committed the error (1) of giving notice of the expiration of the contract to persons other than those with whom it had contracted; (2) of accepting from them the $30 payment for the balance of the price of the vault;[7] (3) of giving a receipt of ownership to said persons; and (4) of failing to make an entry of said sale in the records

---

[6] Section 1077 of the Civil Code, 1930 ed., provides in its pertinent part:
"The right to rescind the obligations is considered as implied in mutual ones, in case one of the obligated persons does not comply with what is incumbent upon him."

[7] If the value of the vault had been reduced to $50 and the defendant had already received the sum of $30 on account, only $20 were owed.

of the cemetery. Besides, far from rescinding the preexisting contract with the plaintiffs, it subsequently accepted two payments from the latter, upon which last payment, it gave the plaintiffs a receipt and the corresponding title to the vault. The acceptance of said payments by the defendant amounted to an extension of the original term of the lease and option and finally to the consumation of the contract of sale with the plaintiffs. Notwithstanding this, a month and 18 days later the defendant authorized the exhumation of Julio Alustiza's remain and the burial of Mrs. García widow of Prieto. Consequently, there was a double sale of the same vault. We must hence determine for our purposes which of the purchasers is the owner at law of the vault and, consequently in case plaintiffs are the owners, whether there has been a breach of contract on the part of the defendant.

According to § 1362 of the Civil Code, 1930 ed.:

"If the same thing should have been sold to different vendees, the ownership shall be transferred to the person who may have first taken possession thereof in good faith, if it should be personal property.

"Should it be real property, it shall belong to the person acquiring it who first recorded it in the registry.

"*Should there be no entry, the property shall belong to the person who first took possession of it in good faith,* and, in the absence thereof, to the person who presents the oldest title, provided there is good faith." (Italics ours.)

Obviously we are concerned here with an immovable and as there is no evidence in the record that any of the sales was recorded, we must decide which of the two purchasers took possession first. Doubtless it was the plaintiffs since their possession dates back to August 5, 1939, when Julio Alustiza's body was buried in the vault and when the lease contract with an option for purchase was executed with the defendant. When the contract was consummated on November 5, 1945 the plaintiffs were still in possession thereof. On the other

hand, there is no evidence in the record that the Alustiza family had taken possession of the vault prior to December 23, 1945.

■ In addition, there is no question that there was a breach of contract on the defendant's part. Such breach consisted in the acts which we have reported above in detail. As we said in *Maldonado* v. *Municipality of Ponce,* 39 P.R.R. 226, 228, "The gravamen of the action was the violation by defendant of the sepulchre previously sold and delivered to plaintiff. The opening of the vault and the removal of remains therefrom by the municipality was not only a tort but also a breach of the contract of sale. The sale to Velázquez was only a link in the chain of events which led up to and explained the breach of the previous contract entered into with plaintiffs. . . ." Since there was a breach of contract the defendant is liable, pursuant to the provisions of §§ 1054 and 1060 of the Civil Code, *supra,* for damages once the same are proved.

■ Since if any of the defenses set up by the defendant should prosper, the complaint would in any event have to be dismissed and the judgment affirmed, we shall proceed to discuss said defenses summarily. The complaint, in the terms in which it is couched, clearly adduces a cause of action. Since it involves a claim for damages *ex contractu,* the action had not prescribed for pursuant to our holding in *Segarra* v. *Vivaldi,* 55 P. R.R. 153, actions of this nature prescribe in 15 years.[8] The defense of res judicata does not lie either since there was no identity of persons. *Ex parte Soto; Rodríguez, Int.,* 71 P.R.R. 511; *Muñoz* v. *Pardo,* 68 P.R.R. 569, 572; *Meléndez* v. *Cividanes,* 63 P.R.R. 4. When as a result of a breach of contract several persons claim having suffered damages, and they join in the suit as plaintiffs, it cannot be said that there is a misjoinder of parties. Rule 19 (*a*) of the

---

[8] The plaintiffs were informed on May 12, 1946 of the desecration of the tomb and the complaint of the case at bar was filed on May 23, 1949. See §§ 1864 and 1869 of the Civil Code, 1930 ed.

Rules of Civil Procedure.[9]  The motion to strike out does not lie either.  Even though it is true that in *González Mena* v. *Dannermiller Coffee Co.*, 48 P.R.R. 590; *Díaz* v. *Cancel*, 61 P.R.R. 857; and *Díaz* v. *Palmer*, 62 P.R.R. 106, we held that the mental sufferings are not damages to be compensated in actions based on breach of contracts, that was so in all those cases because, as we noted, said damages could not be foreseen at the time the obligation was constituted nor were they a necessary consequence of its nonfulfillment.

In this case there was, as we have said, a breach of contract on the part of the defendant and although the title of ownership was in the name of Luis Camacho, the defendant issued receipts in his name as well as in the name of Eladia Camacho and both were considered as purchasers of vault No. 48.  In a contract of lease and sale of a vault as the one involved herein, the damages claimed by plaintiffs for the sufferings and mental anguish could have been foreseen by the defendant and are clearly a necessary consequence of the breach of contract.  *Serrano* v. *Government of the Municipality of Río Piedras*, Per Curiam opinion of November 29, 1950; *Valedón* v. *Municipality of Ponce, supra; Maldonado* v. *Municipality of Ponce, supra;* and *Clemadell* v. *Municipality of Juana Díaz*, 14 P.R.R. 608.  We have already set forth the proof of the damages introduced by each one of the plaintiffs.  Likewise, that although there was a desecration of the tomb as stated in detail in the course of this opinion, Julio Alustiza's remains were placed again in the same vault and it was written on the gravestone that the remains rested there. This distinguishes the case at bar from those in which the desecration has reached the limit where the remains have disappeared.  Consequently, the compensation to be granted in this case should be less.

---

[9] Rule 19(*a*) provides substantially:

"(*a*) *Necessary Joinder.*—Subject to the provisions of Rule 23 and of subdivision (*b*) of this rule, persons having a joint interest shall be made parties and be joined on the same side as plaintiffs or defendants...."

The judgment appealed from will be reversed and another rendered ordering defendant to pay plaintiff Eladia Camacho widow of Alustiza [10] the sum of $1,000 and to plaintiff Luis Camacho the sum of $500 with costs on said defendant plus the sum of $300 for attorney's fees.

---

[10] Although a copy of the parochial entry of the marriage was introduced in evidence it was not admitted. The court acted correctly in so ruling. Section 85 of the Civil Code, 1930 ed. Copy of the marriage certificate duly certified by the person in charge of the Registry of Vital Statistics was never introduced in evidence.